## ALVERA M. ALDABE, Appellant, *v.* ROBERT TAYLOR ADAMS, Respondent.

No. 4857

May 14, 1965                                        402 P.2d 34

[Rehearing denied June 3, 1965]

*James W. Johnson, Jr.,* of Reno, and *Lawrence K. Karlton,* of Sacramento, for Appellant.

*Goldwater, Taber and Hill,* of Reno, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

We are asked to overturn a summary judgment for Robert Taylor Adams, one of the defendants below and the respondent here, which rests upon the statutes of limitation barring a claim of damages for fraud (NRS

11.190 (3) (d)) and conspiracy (NRS 11.220).[1] The contention is made that a genuine issue of material fact remains as to the bar of limitations and that summary judgment was improper for that reason. Dredge Corp. v. Wells Cargo, Inc., 80 Nev. 99, 389 P.2d 394. We rule that the appellate contention is unsound, and affirm the entry of summary judgment. Our ruling stands mainly on the proposition that a genuine issue of material fact may not be created by the conflicting sworn statements of the party against whom summary judgment was entered.

In the lower court three individuals in addition to Adams were similarly charged by Alvera Aldabe with fraud and conspiracy—Attorney Jack Streeter, her former husband Charles Aldabe, and David Evans. The charges of fraud and conspiracy in this case relate to the manner in which a prior Nevada divorce case was handled.

On April 29, 1960, the Aldabes' marriage of 19 years was dissolved by a final Nevada divorce decree. The divorce action was initiated by Alvera on July 13, 1959. Her counsel in that case was Jack Streeter. The verified complaint alleged her domicile and residence in Nevada for a period of 18 years immediately preceding. She sought custody of and support for two minor children, her interest in community property, a divorce and other proper relief. Charles responded by answer and counterclaimed for divorce. His counsel was Robert Taylor Adams. Alvera did not appear at the hearing; her counsel did. The divorce was awarded to Charles on his counterclaim. He was also given custody of their son, joint custody of their daughter, and most of the property including a valuable ranch and livestock. The instant action was commenced on June 16, 1964, more than four years after the decree of divorce was entered. As

---

[1]NRS 11.190(3) (d) : "Actions other than those for the recovery of real property can only be commenced as follows : * * * Within 3 years : * * * An action for relief on the ground of fraud or mistake; the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

NRS 11.220—An action for relief not provided for by NRS 11.190–11.220 inclusive must be commenced within four years after the cause of action shall have accrued. An action charging conspiracy is such an action.

indicated in Footnote No. 1, the bar of limitations is available against a claim for relief grounded on fraud if such claim is not asserted within three years "after discovery by the aggrieved party of the facts constituting the fraud." The statute of limitations runs against an action based on conspiracy in four years, viz., such an action must be commenced within four years after the cause of action shall have accrued. Accordingly our inquiry as to the claim of fraud is to ascertain the date of Alvera's discovery of the facts which she asserts to constitute fraud. With regard to the civil conspiracy charge we must adopt a rule for Nevada specifying when that cause of action accrues and calculate whether the four year limitation is a bar.

Stripped of its overburden the complaint charges that the perpetrators of fraud and co-conspirators each knew that neither Alvera nor her husband was a resident of Nevada, but proceeded with the divorce case anyway. Further, she claims that her attorney and Adams fraudulently and in furtherance of the conspiracy stipulated as to the character of the Aldabe property interests, to her great damage, for the decree as to property was mainly governed by that stipulation. Her conclusory allegations are: "That all the defendants at a time unknown to plaintiff, made and entered into a conspiracy to coerce and defraud plaintiff, and deprive plaintiff of her legal rights and property," and "That plaintiff did not learn of the facts indicating the existence of fraud and a conspiracy to defraud until after November, 1960."

We may, of course, summarily reject any contention here that a genuine issue of fact about the bar of limitations was created by the bare allegation of the complaint that she learned of the fraud and conspiracy "after November, 1960." NRCP 56(e) ;[2] Franktown v. Marlette, 77 Nev. 348, 364 P.2d 1069; Dredge Corp. v.

[2] NRCP 56(e) in pertinent part reads: "* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Husite, 78 Nev. 69, 369 P.2d 676. The rule and the cited cases direct our attention to an evaluation of the evidentiary material presented to the court on the summary judgment motion. Accordingly we turn to discuss the evidence submitted to the lower court.

1. *Fraud.* Within four months after commencing her Nevada divorce action Alvera filed a suit for divorce in California. The jurisdictional allegations in the two cases, each under oath, are wholly incompatible. One of them is false. Four days after starting the California case Alvera filed a verified reply to the counterclaim of her husband in the Nevada case, in which she asked that she be granted the relief prayed for in her Nevada divorce complaint. Thereafter, on April 25, 1960, and before the Nevada case was brought on for trial, Alvera swore to an affidavit in the California case stating, among other things: "That defendant is a strong and able bodied man and that he is in possession of community property of plaintiff and defendant which has a value in excess of $250,000.00; that defendant is trying to conceal the community character of said property and is claiming most of it as his sole and separate property; that said claim is false and fraudulent and intended to deprive plaintiff of her just share of the community property." In addition, she stated in that affidavit that she had retained a California attorney to "prosecute this action to a proper conclusion, and resist defendant's efforts to deprive plaintiff of her legal rights by the spurious suit in the State of Nevada."

The rule of Howard v. Howard, 69 Nev. 12, 239 P.2d 584, places an obligation on the party claiming fraud to excuse the failure to discover it within three years after it occurred. There must be a showing that she had no actual or presumptive knowledge of facts sufficient to put her on inquiry. Alvera's affidavit of April 25, 1960, does not satisfy the Howard standard. Rather, the opposite is true. By that sworn statement she disclosed her knowledge of facts which she believed to constitute fraud. If her knowledge was not then complete she was

under a duty to exercise proper diligence to learn more. Howard v. Howard, supra.

Seeking to avoid the Howard rule, Alvera directs our attention to another of her sworn statements—an affidavit filed below in opposition to the motion for summary judgment. This affidavit (and two others—one of a private investigator and another by a California lawyer) purports to show that Alvera did not really know enough about the fraud in April 1960 to do anything about it. Her knowledge was incomplete. A "legal discovery" did not occur until much later. The conflict between her April 25, 1960, affidavit and her affidavit below (sworn to on August 15, 1964) is manifest. It is this conflict (she argues) which creates an issue of material fact about the date when she discovered the alleged fraud, and that conflict must be resolved by trial and not otherwise. We reject this contention.

Our law does not promise a trial to one who views the sanctity of an oath so lightly, if preliminary procedures show her cause to be unworthy. When Rule 56 speaks of a "genuine" issue of material fact, it does so with the adversary system in mind. The word "genuine" has moral overtones. We do not take it to mean a fabricated issue. Though aware that the summary judgment procedure is not available to test and resolve the credibility of opposing witnesses to a fact issue (Short v. Hotel Riviera, Inc., 79 Nev. 94, 378 P.2d 979), we hold that it may appropriately be invoked to defeat a lie from the mouth of a party against whom the judgment is sought, when that lie is claimed to be the source of a "genuine" issue of fact for trial. Schoener v. Waltman, 125 Cal.App.2d 182, 270 P.2d 543. In these circumstances it was permissible for the lower court to prefer Alvera's affidavit of April 25, 1960, as showing the true date of discovery, and thus bar her claim of fraud. Cf. Manville v. Manville, 79 Nev. 487, 387 P.2d 661.

In any event the record shows that on September 19, 1960, Charles Aldabe filed an answer in the California

action in which he alleged that on April 29, 1960, the Nevada court had entered its decree denying Alvera a divorce and awarding a divorce to him. A copy of the Nevada decree of divorce was attached to his answer, served upon Alvera's California counsel, and pleaded as a bar to the California case. Though Alvera disclaims any knowledge of the provisions of the Nevada decree until a much later date, our law denies that disclaimer. Milner v. Dudrey, 77 Nev. 256, 362 P.2d 439. The rule of Milner is that "notice to the attorney of any matter relating to the business of the client in which the attorney is engaged is notice to the client." Applied here, it means that Alvera discovered the "fraud" on September 19, 1960, more than three years before the present suit was started. Her fraud charge is barred for this additional reason.

[Headnotes 10–12]

2. *Conspiracy.* The tort of civil conspiracy is recognized in Nevada, and a suit for damages based thereon may be permissible. Hotel Riviera, Inc. v. Short, 80 Nev. 505, 396 P.2d 855. The bar of limitations is four years from the date the cause of action accrues. NRS 11.220. Court expression is not in harmony as to the event marking the accrual date. See Annot., 62 A.L.R. 1385. One court suggests that the limitation period begins to run from the last overt act done in pursuance of the conspiracy. Schessler v. Keck, 125 Cal.App.2d 827, 271 P.2d 588; another, from the last overt act causing damage to the plaintiff, Kansas City v. Rathford, 353 Mo. 1130, 186 S.W.2d 570; a third, from each overt act causing damage, Roche v. Blair, 305 Mich. 608, 9 N.W.2d 861; and others prefer the date of injury or damage as the starting point. Suckow Borax Mines v. Borax Consolidated Ltd., 9 Cir., 185 F.2d 196; Rutkin v. Reinfeld, 2 Cir., 229 F.2d 248. We also prefer the date of injury or damage rule, for it is in line with the theory of a civil conspiracy suit. The court in Rutkin v. Reinfeld, supra, expressed it by the following language which we approve: "The damage for which recovery may be had in a civil action is not the conspiracy itself, but the injury to the plaintiff produced by specific overt acts—the charge of

conspiracy in a civil action is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts. —it is at the time of injury that the right to relief by action arises and the statute therefore begins to run at the moment such injury occurs."

Here the so-called conspiracy among the defendants below was to fraudulently procure a Nevada divorce divesting Alvera of her property and other rights. Arguendo, if the charge were true, her damage or injury was sustained upon entry of the divorce decree on April 29, 1960. The purpose of the conspiracy was realized on that date, and the damage done. Therefore, her claim for relief on this ground was outlawed on April 29, 1964. Her complaint below was not filed until June 16, 1964, and is too late.

3. *Caveat.* Apart from the bar of limitations, we doubt whether one in Alvera's position (plaintiff in the Nevada divorce action, who challenges the jurisdiction of the Nevada court) may later sue for damages alleged to have been caused by the fraudulent and conspiratorial conduct of the participants (the defendant, the attorneys and the witnesses) in the divorce case. The point was hinted at but not directly raised below or here. Perhaps the sole remedy is seasonably to challenge the validity of the divorce by an appropriate proceeding for that purpose, for if the divorce is valid a predicate does not exist for a damage claim. This Alvera has not done. It would indeed be incongruous to acknowledge the validity of her divorce and also allow a suit for damages caused by it. A cause of action for damages for an alleged fraud and civil conspiracy, culminating in the procurement of a divorce, seems out of place in this setting.

Affirmed.

BADT, J., and COLLINS, D. J., concur.